UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ERICKA HERNANDEZ,

    Plaintiff,

   v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. CV 14-533 AGR

MEMORANDUM OPINION AND ORDER

  Plaintiff Ericka Hernandez filed this action on February 24, 2014.   Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 9, 14.)  On September 18, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

  Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

## I.

## **PROCEDURAL BACKGROUND**

On January 28 and February 1, 2011, Hernandez filed applications for supplemental security income and disability insurance benefits.  She alleged an onset date of January 20, 2009.  Administrative Record ("AR") 31, 223, 225.  The applications were denied.  AR 31, 108-09.  Hernandez requested a hearing before an Administrative Law Judge ("ALJ").  AR 119-20.  On February 17, 2012, Hernandez and a vocational expert ("VE") appeared at the hearing.  AR 52-54.  The ALJ continued the hearing to allow Hernandez to obtain representation.  AR 55-56.  On June 5, 2012, the ALJ conducted a hearing at which Hernandez and a VE testified.  AR 57-107.  On July 16, 2012, the ALJ issued a decision denying benefits.  AR 25-45.  On November 26, 2013, the Appeals Council denied the request for review.  AR 3-6.  This action followed.

## II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

### III.

### DISCUSSION

**A.  Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

**B.  The ALJ's Findings**

The ALJ found that Hernandez meets the insured status requirements through December 31, 2013.  AR 34.  Following the five-step sequential analysis applicable to disability determinations, *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Hernandez has the severe impairments of disc protrusions of the cervical spine, left shoulder arthritis and tendinitis, history of left wrist carpal tunnel syndrome, asthma, and major depression.  AR 34.  Her impairments do not meet or equal a listing.  AR 35.  She has the residual functional capacity ("RFC") to perform medium work, except she can occasionally engage in postural activities, frequently use her left (dominant) upper extremity, and occasionally engage in overhead activities with her left upper extremity.  She must not be exposed to dust, fumes, gases, extreme temperatures, heights or hazards.  She cannot climb ladders, ropes or scaffolds.  She can perform simple work with no public contact.  AR 37.  She is unable to perform any

---

[1]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsbury*, 468 F.3d at 1114.

1   past relevant work, but there are jobs that exist in significant numbers in the national

2   economy that she can perform such as laundry worker and general helper.  AR 43-44.

3   **C.   Treating Doctors**

4   Hernandez contends the ALJ erred in not crediting the opinions of Dr. Friedman,

5   a Qualified Medical Examiner in psychiatry, and Dr. Enierga, a chiropractor and certified

6   functional capacity evaluator for her worker's compensation claim.[2]

7   An opinion of a treating physician is given more weight than the opinion of

8   non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an

9   uncontradicted opinion of a medically acceptable treating source, an ALJ must state

10  clear and convincing reasons that are supported by substantial evidence.  *Bayliss v.*

11  *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a treating physician's opinion is

12  contradicted by another doctor, "the ALJ may not reject this opinion without providing

13  specific and legitimate reasons supported by substantial evidence in the record.  This

14  can be done by setting out a detailed and thorough summary of the facts and conflicting

15  clinical evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d

16  at 632 (citations and quotation marks omitted).  "When there is conflicting medical

17  evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v.*

18  *Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

19  1. Dr. Friedman

20  Dr. Friedman performed an Agreed Medical Examination on November 19, 2007,

21  and performed re-examinations on August 4, 2008 and August 31, 2009.  AR 815-902.

22  In all three examinations, Dr. Friedman diagnosed Hernandez with aggravation of a pre-

23  existing Depressive Disorder Not Otherwise Specified, with a Global Assessment of

24  Functioning ("GAF") score of 56.[3]  AR 816, 840, 857, 902.  Dr. Friedman's 2009

25

26      [2] Hernandez also challenges the ALJ's reason for discounting Dr. Curtis' opinion.

27      [3] A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and

28  circumstantial speech, occasional panic attacks) or moderate difficulty in social,

4

assessment indicated that Hernandez has a slight to moderate impairment in comprehending and following instructions, a slight impairment in performing simple and repetitive tasks, a very slight to slight impairment in maintaining work pace, a very slight impairment in performing complex and varied tasks, a slight impairment in relating to other people and influencing others, and a slight impairment in the ability to make decisions and accept and carry out responsibilities. AR 40, 835-36. Hernandez receives psychotropic medication from Dr. Curtis, but she had seen him on only two occasions in more than one year. AR 820. She receives psychotherapy in group four times per month and individual therapy approximately twice per month. AR 821.

The ALJ considered and discussed Dr. Friedman's 2009 assessment and assigned it "little weight."[4] AR 40. He noted that Dr. Friedman primarily relied on Hernandez's subjective complaints, did not perform a thorough mental status examination or use multiple objective diagnostic tools in formulating his assessment, and failed to provide insight on Hernandez's mental functioning from 2010-12. *Id.*

Hernandez argues that Dr. Friedman performed a thorough mental status examination and administered numerous psychological tests. AR 817-18, 828. Hernandez contends Dr. Friedman noted a concentration deficit that was not included in her RFC. The Commissioner counters that the ALJ did not err, but even assuming error, any error was harmless because the RFC finding for simple work with no public contact is reasonably consistent with Dr. Friedman's slight to moderate limitations.

occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).

    [4] The ALJ considered Dr. Friedman an examining doctor, not a treating source. AR 40. An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn*, 495 F.3d at 631. An ALJ may reject an uncontradicted examining physician's medical opinion based on "clear and convincing reasons." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and quotation marks omitted). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* (citation omitted).

The court agrees that the RFC is consistent with Dr. Friedman's finding that Hernandez had a slight to moderate impairment in concentration, notwithstanding the little weight the ALJ assigned to Dr. Friedman's assessment. AR 835. The ALJ found that Hernandez has moderate difficulties with regard to concentration, persistence or pace, and determined that she could perform simple work with no public contact.[5] AR 36. The ALJ's RFC for simple work with no public contact adequately encompasses Hernandez's limitations related to concentration, persistence or pace. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (restriction to simple tasks "adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony"); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (when psychologist both identified claimant as having deficiencies of concentration, persistence or pace and pronounced claimant possessed the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately captured claimant's deficiencies in concentration persistence or pace). To the extent Hernandez contends that the ALJ should have noted "a concentration deficit" in the hypothetical to the VE, her contention is rejected. The ALJ's hypothetical included simple work with no public contact and adequately captured Hernandez's limitations in concentration, persistence or pace. AR 95; *see Stubbs-Danielson*, 539 F.3d at 1174.

---

[5] The ALJ gave "great weight" to the opinion of Dr. Tashjian, a State Agency medical consultant, who opined that Hernandez had moderate difficulties in maintaining concentration, persistence or pace, and could perform simple work with limited public contact. AR 39, 520, 522.

2.  <u>Dr. Enierga</u>

Hernandez does not dispute that a chiropractor is not an acceptable medical source, but she argues that the ALJ failed to give germane reasons for discrediting Dr. Enierga's opinion.

The Social Security regulations distinguish between opinions from "acceptable medical sources" and "other sources."  *See* 20 C.F.R. § 404.1513(a) & (d).  Chiropractors are considered "other sources," *see* 20 C.F.R. § 404.1513(d)(1), and do not receive the same deference as medical source opinions.  *See Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996) (opinions from "other sources" can be afforded "less weight than opinions from acceptable medical sources").  Nevertheless, an ALJ may use evidence from "other sources" when considering the severity of a claimant's impairments and how those impairments affect the ability to work.  *See* 20 C.F.R. § 404.1513(d).  If the ALJ discounts evidence from "other sources," the ALJ must give "reasons germane to each witness for doing so."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Dr. Enierga provided a functional capacity evaluation of Hernandez on May 21, 2009.  AR 1024-29.  She conducted a physical examination, including measurements of the upper extremities, grip strength, range of motion, and computer assisted muscle testing.  AR 1024-25.  She recommended a maximum lift and carry of five pounds.  She opined that Hernandez has limited reaching, handling, and pinching for extended periods of time without a change in duty.  Hernandez has difficulty with fine motor manipulation and needs a 10 minute break every 60 minutes.  Dr. Enierga recommended a trial of return to work, with possible accommodation.  AR 1028.

The ALJ gave Dr. Enierga's opinion that Hernandez could perform less than sedentary exertional work "little weight."  AR 39.  He noted:

Dr. Enierga is a chiropractor.  Consequently, this individual is not an acceptable medical source; the opinion of such a source cannot establish a medically determinable impairment, although it can be used as "evidence

1   of other sources" regarding severity (*See* 20 C.F.R. §§ 404.1513 and

2   416.913).  Further, under 20 CFR §§ 404.1527 and 416.927, only

3   statements from acceptable medical sources can constitute medical

4   opinions that are to be weighed against other medical assessments.

5     Therefore, I cannot afford any significant weight to this evaluation.

6   AR 39.   The ALJ did not further discuss the opinion.

7     The ALJ erred in rejecting Dr. Enierga's opinion solely because she is a

8   chiropractor.  *See Molina*, 674 F.3d at 1111.  This matter is being remanded for

9   reconsideration of Dr. Enierga's opinion.  On remand, if the ALJ wishes to reject Dr.

10   Enierga's opinion, he must give germane reasons for doing so.

11     **D.** **Credibility**

12     "To determine whether a claimant's testimony regarding subjective pain or

13   symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v.*

14   *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine

15   whether the claimant has presented objective medical evidence of an underlying

16   impairment 'which could reasonably be expected to produce the pain or other

17   symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)

18   (en banc)).  The ALJ found that Hernandez' medically determinable impairments could

19   reasonably be expected to produce the alleged symptoms.  AR 41.

20     "Second, if the claimant meets this first test, and there is no evidence of

21   malingering, the ALJ can reject the claimant's testimony about the severity of her

22   symptoms only by offering specific, clear and convincing reasons for doing so."

23   *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a

24   credibility determination, the ALJ 'must specifically identify what testimony is credible

25   and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464

26   F.3d 968, 972 (9th Cir. 2006) (citation omitted).

27     In weighing credibility, the ALJ may consider factors including:  the nature,

28   location, onset, duration, frequency, radiation, and intensity of any pain; precipitating

1    and aggravating factors (e.g., movement, activity, environmental conditions); type,

2    dosage, effectiveness, and adverse side effects of any pain medication; treatment,

3    other than medication, for relief of pain; functional restrictions; the claimant's daily

4    activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346

5    (citing Social Security Ruling ("SSR") 88-13)[6] (quotation marks omitted).  The ALJ may

6    consider:  (a) inconsistencies or discrepancies in a claimant's statements; (b)

7    inconsistencies between a claimant's statements and activities; (c) exaggerated

8    complaints; and (d) an unexplained failure to seek treatment.  *Thomas*, 278 F.3d at 958-

9    59.

10            As the ALJ noted, Hernandez alleged that she can lift approximately 10 pounds,

11   cannot reach, and has problems using her left hand.  AR 41, 80, 87, 279, 296.  She can

12   walk about two blocks, stand for one hour, and sit for one hour.  AR 41, 80, 279.  She

13   has constant pain in her neck, back and abdomen.  AR 75.  She has problems with

14   memory.  AR 75.

15            The ALJ found that Hernandez's statements concerning the intensity, persistence

16   and limiting effects of her symptoms were not credible to the extent they were

17   inconsistent with the RFC.  AR 41.  The ALJ primarily relied on four reasons:  (1) the

18   objective evidence did not support the degree of Hernandez's allegations; (2)

19   Hernandez had a conservative history of treatment; (3) Hernandez's activities of daily

20   living were not consistent with the alleged degree of pain and impairment; and (4)

21   Hernandez's history of compensation undermined her allegations.  AR 41-42.

22

23

24

25

26            [6]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute

27   Social Security Administration interpretations of the statute it administers and of its own
     regulations," and are given deference "unless they are plainly erroneous or inconsistent

28   with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1            1.  <u>Objective Evidence</u>

2            Hernandez' sole argument regarding the ALJ's credibility assessment is that the

3    ALJ erred in determining that she was "less than fully credible" based on the objective

4    medical evidence.  AR 41.

5            Although lack of objective medical evidence supporting the degree of limitation

6    "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ

7    may consider in assessing credibility.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

8    2005).  The ALJ found that the record did not contain enough objective evidence of

9    debilitating impairments to make Hernandez's allegations readily believable.  AR 41.

10   Dr. Lim, a consultative examiner, opined in April 2011 that Hernandez could perform

11   medium exertional work.  AR 37, 497-500.  Dr. Lim found that Hernandez had pain on

12   motion of her neck, but had a range of motion of 45/45 degrees for lateral flexion, 50/50

13   degrees for flexion, and 50/60 degrees for extension.  AR 37, 499.  She had a slow gait

14   but a normal spine curvature, without kyphoscoliosis, a normal range of motion for her

15   back, normal range of motion for her upper and lower extremities bilaterally, normal

16   muscle bulk and tone without atrophy, 30 pounds of force bilaterally using the Jamar

17   Hand Dynamometer, intact cerebellar function, and normal deep tendon reflexes.  AR

18   37-38, 498-500.  Hernandez's cervical spine x-ray was normal.  AR 38, 501.

19           The ALJ noted that in April 2008 Hernandez had a slight weakness in her left

20   biceps and triceps, with a left hand grip strength of equal or slightly less than her right,

21   as well as decreased left upper extremity sensation.  AR 38, 390, 413.  She had an

22   abnormal MRI cervical scan, revealing disc protrusions at C4-5 and C5-6, and an

23   abnormal cervical discogram at the C4-C5 and C5-C6 levels.  AR 38, 413.  In

24   November 2008, Hernandez had largely normal results on a nerve conduction study

25   and no other evidence of active cervical radiculopathy in the bilateral upper extremities

26

27

28

on an EMG.[7]  AR 38, 416, 422.  As of March 2012, Hernandez had normal motor function and normal motor coordination.  AR 38, 797; *see also* AR 601, 677-78, 719. As of May 2012, Hernandez's neck was supple and showed no JVD, carotid bruits, lymphadenopathy, or thyromegaly.  AR 1372.  Her extremities showed no edema or cyanosis, and her pulses were palpable bilaterally.  *Id.*

The ALJ noted that in February and March 2012 Hernandez received treatment for pneumonia, bronchitis, and asthma.  AR 38-39, 76, 637.  She testified that "it had been a while since I had been to the hospital."  AR 39, 76.  The ALJ noted that in April 2011, her lungs were clear to auscultation bilaterally with normal excursion with respirations.  AR 38-39, 499.

Regarding Hernandez's abdominal pain, the ALJ noted that Hernandez had gastritis in October 2011, but he found no evidence of consistent treatment thereafter. AR 34, 562, 1226-27, 1231.  Hernandez had an exploratory laparotomy, supracervical hysterectomy and bilateral salpingoophorectomy in March 2011 with no evidence of subsequent complications related to these procedures.  AR 34-35, 484-86.  In May 2012, Hernandez was hospitalized for abdominal pain.  AR 1312, 1326.  She was diagnosed with diverticulitis colon (without "ment of hemorrhage"), pressure ulcer, stage III, hypertension NOS, unspec constipation, and pressure ulcer, buttock.  AR 1336. According to the record, she received little treatment for her condition.  AR 1379, 1448-49.  The ALJ found no reliable evidence that Hernandez's abdominal impairment would persist or be expected to persist for 12 months.  AR 35 (citing 20 C.F.R. §§ 404.1509, 416.909).

Hernandez argues that she was diagnosed with a rare infectious disease, cysticercosis, in August 2009.  AR 446.  However, there is no evidence in the record of any physical limitations as a result of the diagnosis or any follow up treatment.

---

[7]  As the Commissioner argues, Hernandez was working at the time of the 2008 tests.

1    The ALJ's finding as to the objective medical record as a whole is supported by

2    substantial evidence.[8]

3              2. Conservative Treatment

4    "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's

5    testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th

6    Cir. 2007) (citation omitted).  The ALJ noted that Hernandez was treated with

7    medication for her asthma and her hand problems, and with pain injections for her

8    cervical spine and shoulder.  AR 42.  Hernandez acknowledged that she had not

9    undergone any surgical procedures for her cervical spine impairment, and there was no

10   evidence in the record that she had surgery for her shoulder impairment or carpal tunnel

11   syndrome.  The ALJ noted the lack of evidence of consistent physical therapy for her

12   physical impairments.  *Id.*  Regarding Hernandez's mental health treatment, Hernandez

13   testified that she receives no mental health treatment and that she last received such

14   treatment in 2005 while she was working.  AR 42, 82-83.  The ALJ noted Hernandez

15   apparently has not received psychotherapy, treatment or other medical interventions in

16   a mental health facility.  AR 42.  She does not receive outpatient services, counseling,

17

18

19        [8] Even assuming the ALJ erred in discounting Hernandez's credibility based on lack

20   of supporting objective evidence, remand would not necessarily be warranted.  In

     *Carmickle*, 533 F.3d at 1155, the Ninth Circuit concluded that two of the ALJ's reasons

21   for making an adverse credibility finding were invalid.  However, when an ALJ provides

22   specific reasons for discounting the claimant's credibility, the question is whether the

     ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining

23   reasoning *and ultimate credibility determination.*"  *Id.* at 1162 (emphasis in original).

24   Therefore, when an ALJ articulates specific reasons for discounting a claimant's

     credibility, reliance on an illegitimate reason(s) among others does not automatically

25   result in a remand.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197

     (9th Cir. 2004).  As set forth below, in light of the ALJ's valid reasons for discounting

26   Hernandez's credibility and the record as a whole, substantial evidence supports the

27   ALJ's credibility finding.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227

     (9th Cir. 2009) (any error was harmless even if record did not support one of four

28   reasons for discounting claimant's testimony).

therapy, or other mental health services from a psychiatrist, psychologist, counselor, or mental health professional. *Id.* The ALJ's finding is supported by substantial evidence.

### 3. Activities of Daily Living

An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346. The ALJ found that Hernandez's activities are inconsistent with the alleged degree of impairment. AR 42. She cooks four or five days per week for her three adult children, washes dishes, does laundry, shops in stores, watches television and has no problems with personal care.[9] AR 42, 81-82, 274-78. She walks about two blocks to the store to buy groceries. AR 82. She talks on the telephone and keeps in touch with family members, and also visits with neighbors and attends doctor appointments. AR 36, 42, 278. The ALJ permissibly relied on evidence that Hernandez could perform a variety of daily activities as a factor undermining her credibility.

### 4. History of Compensation

The ALJ found that Hernandez's history of compensation undermined her allegations. AR 42. Hernandez received unemployment benefits for 18 months after she was laid off in January 2009. AR 42, 71, 89-90, 821, 823. "Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Hernandez testified that she looked for work after she was laid off, but was unsuccessful. AR 42, 89-90. The ALJ found that Hernandez's efforts to find work after her alleged onset date suggests she is not as limited as she alleges. AR 42. The ALJ's finding is supported by substantial evidence.

---

[9] Hernandez argues that she reported difficulty washing dishes in 2005 and moderate pain with activities of daily living in February 2008. AR 1087, 1218. However, as the Commissioner argues, Hernandez returned to work as an inspector in 2008. AR 69, 448. Therefore, her difficulties with activities of daily living prior to the alleged onset date and while she was working are of little relevance when analyzing the ALJ's credibility determination.

1   When, as here, "the ALJ's credibility finding is supported by substantial evidence

2   in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959

3   (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).  The

4   ALJ did not err in his credibility assessment.

5   **E.   RFC Determination**

6   Hernandez contends the ALJ's RFC assessment did not adequately account for

7   her psychological limitations and her limited ability to lift, carry, and perform fine and

8   gross manipulation.

9   The RFC determination measures the claimant's capacity to engage in basic

10   work activities.  *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d

11   462 (1986).  The RFC is a determination of "the most [an individual] can still do despite

12   [his or her] limitations."  20 C.F.R. § 404.1545(a).  It is an administrative finding, not a

13   medical opinion.  20 C.F.R. § 404.1527(e)(2).  The RFC takes into account both

14   exertional limitations and non-exertional limitations.  The RFC must contain "a narrative

15   discussion describing how the evidence supports each conclusion, citing specific

16   medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities,

17   observations)."  SSR 96-8p.  The ALJ must also explain how he or she resolved

18   material inconsistencies or ambiguities in the record.  *Id.*  "When there is conflicting

19   medical evidence, the Secretary must determine credibility and resolve the conflict."

20   *Thomas*, 278 F.3d 947, 956-57 (citation omitted).

21   The ALJ's RFC determination was that Hernandez could perform medium work,

22   except she can occasionally engage in postural activities, frequently use her left

23   (dominant) upper extremity, and occasionally engage in overhead activities with her left

24   upper extremity.  She must not be exposed to dust, fumes, gases, extreme

25   temperatures, heights or hazards.  She cannot climb ladders, ropes, or scaffolds.  AR

26   37.  She can perform simple work and have no public contact.  *Id.*

27   Because this matter is being remanded for reconsideration of Dr. Enierga's

28   opinion, which includes limitations regarding Hernandez' ability to lift, carry, and perform

1   fine and gross manipulation, the ALJ is free to reconsider the physical RFC on

2   remand.[10]  As discussed above, the mental RFC adequately captures Hernandez's

3   deficiencies in concentration, persistence or pace.

4                                   **IV.**

5                                  **ORDER**

6          IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and

7   remanded for reconsideration of Dr. Enierga's opinion and the physical residual

8   functional capacity.

9          IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the

10  Judgment herein on all parties or their counsel.

11

12

13  DATED: February 25, 2015
                                    _____
14                                        ALICIA G. ROSENBERG
                                       United States Magistrate Judge

15

16

17

18

19

20

21

_____

22         [10]  To the extent Hernandez argues that the VE's testimony conflicts with the
    Dictionary of Occupational Titles ("DOT") because the DOT does not distinguish
23  between dominant and non-dominant upper extremities, her argument fails.  JS 19
    (citing SSR 00-4p).  The DOT raises a rebuttable presumption as to job classification.
24  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  The Ninth Circuit has not
    addressed the question of whether an apparent conflict with the DOT arises when the
25  DOT is silent as to a particular mental or physical requirement.  This court declines to
    find an "apparent" conflict when the DOT is silent about a particular mental or physical
26  requirement and the claimant's counsel failed to raise or identify any conflict to the ALJ.

27

28